IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Kelso Rutledge, | ) |
| | ) C/A No. 6:20-cv-04214-DCC |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Santander Consumer USA Inc., | ) **OPINION AND ORDER** |
| Mid Atlantic Asset Recovery LLC, | ) |
| and PAR Inc., | ) |
| | ) |
| Defendants. | ) |

This matter is before the Court on Motions to Compel Arbitration and to Dismiss filed by Defendants Santander Consumer USA Inc. ("Santander"), Mid Atlantic Asset Recovery LLC ("Mid Atlantic"), and PAR Inc. ("PAR"), respectively. ECF Nos. 13, 31, 34.

## BACKGROUND

On May 6, 2014, Plaintiff entered into a loan agreement (titled "Retail Installment Sale Contract") with Koons Automotive, Inc., ("Koons Automotive") for the purchase of a personal vehicle. ECF Nos. 10 at ¶ 6, 13-2 at 5–6. Koons Automotive immediately assigned its interest in the contract, without recourse, to Defendant Santander. ECF No. 13-2 at 5. The Retail Installment Sales Contract ("RISC") provided for repossession in the case of default. *Id*. at 6. It also included the following:

**ARBITRATION CLAUSE**
**PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**
1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS

1

> MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
> 3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute.

ECF No. 13-2 at 6. Pursuant to the arbitration clause, Plaintiff was permitted to choose between the National Arbitration Forum ("NAF"), the American Arbitration Association ("AAA"), "or any other organization . . . subject to [the Seller's] approval." *Id*.

Plaintiff alleges that in July 2018, Defendant Santander placed the loan account in collection status and entered into a contractual agreement with Defendant PAR to employ a local repossession company. ECF No. 10 at ¶ 9. Defendant PAR, in turn, contracted with Defendant Mid Atlantic to effect the repossession of Plaintiff's vehicle. *Id*. On or about July 19, 2019, Plaintiff paid the remaining balance in full and Santander released the lien on the vehicle shortly thereafter. *Id*. at 14. Plaintiff alleges, however, that repossession was nevertheless unlawfully attempted between October 31, 2019, and January 4, 2020. *Id*. ¶ 14. Plaintiff now brings six claims against Defendants based on their repossession attempts.

2

On January 14, 2021, Defendant Santander moved to compel arbitration and dismiss all claims against it based on the arbitration clause of the RISC. ECF No. 13. Defendants Mid Atlantic and PAR subsequently filed their own motions to compel arbitration. ECF No. 31, 34. All three motions are now before the Court.

## APPLICABLE LAW

The Federal Arbitration Act ("FAA") establishes a "strong federal public policy in favor of enforcing arbitration agreements" and is designed to "ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217, 219 (1985). The FAA was enacted "in 1925 in order 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts.'" *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 639 (4th Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). "Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citation omitted).

The FAA provides that arbitration clauses in contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a district court must compel arbitration and stay court proceedings if the parties have agreed to arbitrate their dispute. *Id*. §§ 2, 3. But, if the validity of the arbitration agreement is in issue, a district court must first decide if the arbitration clause is enforceable against

the parties. *Id*. § 4. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Drews Distrib., Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 349 (4th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

A party seeking to compel arbitration must do so by establishing the following four elements: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction, as evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of a party to arbitrate the dispute. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005); *see also Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *Energy Absorption Sys. v. Carsonite Int'l*, 377 F. Supp. 2d 501, 504 (D.S.C. 2005). "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Adkins*, 303 F.3d at 501 (internal quotations and citation omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Id*. (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). Where a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500 (4th Cir. 2002).

**ANALYSIS**

*Arbitration of Claims Against Defendant Santander*

Defendant Santander, as assignee of Koons Automotive's interest in the RISC, moves to compel arbitration of all claims against it pursuant to the arbitration clause. Plaintiff opposes arbitration on the basis that (1) the arbitration clause is unconscionable and therefore invalid, and (2) the claims at issue are outside its scope.[1]

<u>Delegation Clause</u>

Ordinarily, the question of arbitrability is decided by the court. *Peabody Holding Co., LLC v. UMW*, 665 F.3d 96, 102 (4th Cir. 2012) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). However, it is well-established that parties "can agree to arbitrate arbitrability," so long as their agreement "clearly and unmistakably" delegates the arbitrability question to the arbitrator. *Id*. (citation omitted). Under these circumstances, "a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Harry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Moreover, "[t]he Supreme Court has concluded that when a litigant specifically challenges the enforceability of an arbitration agreement with a delegation clause, the challenge must be submitted to the arbitrator *unless* the plaintiff has lodged a specific objection to the delegation clause." *Gibbs v. Sequoia Capital*

---

[1] The Court finds as a threshold matter that (1) there is a dispute between the parties, (2) the transaction is related to interstate commerce, and (3) Plaintiff has refused to arbitrate the dispute. *See Am. Gen. Life*, 429 F.3d at 87. To the extent Plaintiff disputes the final element—the existence of a written contract between Plaintiff and Santander that includes an arbitration provision purporting to cover the dispute—his arguments will be fully addressed herein.

5

*Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). This requires, at the least, a specific reference to the delegation clause. *Id*. (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (8th Cir. 2018)).

The RISC signed by Plaintiff contains a delegation clause, providing that "the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute . . . shall . . . be resolved by neutral, binding arbitration." ECF No. 13-2 at 6. Plaintiff's brief makes no specific reference to the delegation clause; rather, his unconscionability arguments are directed at the arbitration clause as a whole. *See generally* ECF No. 18. Because Plaintiff has not "lodged a specific objection to the delegation clause," the Court must enforce it as written. *Gibbs*, 966 F.3d 286. This precludes judicial review of the scope of the arbitration agreement.

However, unlike many of the delegation clauses addressed in the case law, the RISC does not specifically provide for arbitration of the "validity" or "enforceability" of the arbitration clause. ECF No. 13-2 at 6; *c.f. Gibbs*, 966 F.3d at 290 ("Each of the arbitration agreements contained a delegation clause stipulating that the parties would arbitrate 'any issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate.'"). Therefore, the Court finds that the threshold question of whether the arbitration agreement is valid and enforceable has not been clearly and unmistakably delegated to the arbitrator.[2] *See Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302,

---

[2] Arguably, the validity of the arbitration agreement may be encompassed by the delegation of "the arbitrability of the claim or dispute." ECF No. 13-2 at 6. However, the Court does not find that the determination of the agreement's validity has been "*clearly and unmistakably*" delegated to the arbitrator. *Peabody Holding Co.,* 665 F.3d at 102 (emphasis added).

305 (4th Cir. 2001) ("[F]ederal courts must first decide whether the parties entered into an agreement to arbitrate their disputes."). Before granting Santander's request to compel arbitration, the Court must address Plaintiff's assertion that the arbitration agreement is unconscionable.

*Unconscionability*

A court may find an arbitration agreement unconscionable in "limited situations." *Id*. at 306 (citing *Hooters of America v. Phillips*, 173 F.3d 933 (4th Cir. 1999)). The text of the FAA provides that "an arbitration agreement in writing 'shall be . . . enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020) (quoting 9 U.S.C. § 2). Therefore, "[i]n determining whether the parties executed a valid agreement to arbitrate, courts generally apply ordinary state-law principles that govern the formation of contracts." *Sydnor*, 252 F.3d at 305; *see also Am. Gen. Life*, 429 F.3d at 88 (applying West Virginia law to determine whether arbitration agreement was unconscionable).

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). The RISC contains a choice-of-law provision selecting Virginia law. ECF No. 13-2 at 6. Plaintiff has not objected to the choice-of-law provision, and the application of Virginia law appears to be in accordance with South Carolina choice-of-law principles. *See KJ Appliance Ctr., LLC v. BSH Home Appliances Corp.*, C/A No. 2:19-cv-795-RMG, 2020 WL 219600, at *3 (D.S.C. Jan. 15, 2020) (explaining that South Carolina law honors contractual choice-of-

7

law provisions except where doing so would contravene its public policy). Accordingly, the Court applies Virginia law to the unconscionability analysis.[3]

"[T]he Fourth Circuit has explained that, under Virginia law, '[u]nconscionability is a narrow doctrine whereby the challenged contract must be one which no reasonable person would enter into, and the inequality must be so gross as to shock the conscience.'" *Green v. Kline Chevrolet Sales Corp.*, 2019 WL 3728266, at *6 (E.D. Va. Aug. 7, 2019) (quoting *Sydnor*, 252 F.3d at 305). A party seeking to invalidate a contract must demonstrate both substantive and procedural unconscionability. *Lee v. Fairfax Cnty. Sch. Bd.*, 621 F. App'x 761, 763 (4th Cir. 2015) (citing *Chaplain v. Chaplain*, 628 S.E.2d 108, 113 (Va. Ct. App. 2009)). A contract is substantively unconscionable if it is one that "no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." *Galloway v. Priority Imps. Richmond, LLC*, 426 F. Supp. 3d 236, 244 (E.D. Va. 2019) (quoting *Chaplain*, 628 S.E.2d at 113); *see also Lee*, 621 F. App'x at 763 (substantive unconscionability "requires a gross disparity in the value exchanged") (citation omitted). Procedural unconscionability "involves an absence of meaningful choice on the part of one of the parties." *Galloway*, 426 F. Supp. 3d at 244 (quoting *Carlson v. Gen. Motors Corp.*, 883 F. 2d 287, 292–93 (4th Cir. 1989)). This may be shown by "concealments, misrepresentations, undue advantage, oppressions on the part of one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like." *Lee*, 621 F. App'x at 763 (quoting *Chaplain*, 628 S.E.2d at 113–14).

---

[3] The Court notes, however, that it would reach the same result by applying South Carolina law.

Plaintiff first argues that the RISC is procedurally unconscionable because it "falls squarely under" the analysis of the Supreme Court of South Carolina in *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663 (S.C. 2007). ECF No. 18 at 5. Although, as explained above, the RISC is not properly analyzed under South Carolina, unconscionability doctrine in the two states is substantially similar and the Court will consider *Simpson* in relation to the present case. There, the principal basis for a finding of procedural unconscionability was the "inconspicuous nature of the arbitration clause in light of its consequences." 644 S.E.2d at 670. Specifically,

> While certain phrases within other provisions of the additional terms and conditions were printed in all capital letters, the arbitration clause in its entirety was written in the standard small print, and embedded in paragraph ten (10) of sixteen (16) total paragraphs included on the page.

*Id*.

The undersigned does not necessarily disagree with Plaintiff's assertion that the RISC is a contract of adhesion. However, the additional factors that led to a finding of procedural unconscionability in *Simpson* are not present here.[4] The arbitration clause of the RISC appeared conspicuously at the end of the second (and final) page, was clearly separated from the preceding paragraph, and was marked in bold, all-capital letters: "**ARBITRATION CLAUSE / PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**." ECF No. 13-2 at 6. On the first page, just above the signature line, it was stated:

---

[4] The Court notes in passing, although this argument was not advanced by Plaintiff, that the factors supporting a finding of substantive unconscionability in *Simpson* are even more starkly distinguishable from the present case. *See* 644 S.E.2d at 670–73 (finding, inter alia, that the arbitration clause prevented Simpson from receiving mandatory statutory remedies and permitted the Dealer to bring a judicial proceeding in complete disregard of pending consumer claims requiring arbitration).

9

> **You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

*Id*. at 5. In short, under the circumstances, it is difficult to imagine what more Koons Automotive could have done to make the arbitration clause conspicuous and to emphasize its legal significance. *See*, *e.g.*, *Prosper v. Am. Credit Acceptance, LLC*, C/A No. 7:15-cv-01581-HMH, 2015 WL 13310148, at *4 (D.S.C. Aug. 17, 2015) (finding arbitration clause sufficiently conspicuous where the contract provided in bold lettering above the signature line: "You acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side, before signing below."). The Court consequently finds no procedural unconscionability.

Second, Plaintiff contends the arbitration clause was substantively unconscionable because "[n]o reasonable person would agree to arbitration of any and all claims in perpetuity, especially those arising after both parties had fully performed their contractual duties." ECF No. 18 at 5. This appears to be a strawman argument. A clause providing for arbitration of any and all claims in perpetuity might well be unreasonable and therefore unconscionable, but such a clause is not at issue here.[5] By its clear terms, the arbitration clause covers only those claims that "arise[] out of or relate[] to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or

---

[5] To the extent Plaintiff argues that Defendant Santander's "position" on the meaning of the clause "renders the clause unconscionable," ECF No. 18 at 6, Plaintiff's argument is likewise rejected. Unconscionability depends on the actual meaning and import of the clause, not on what one party believes it to mean.

relationship (including any such relationship with third parties who do not sign this contract)." ECF No. 13-2 at 6. In sum, it is substantively limited to claims with a reasonable relationship to the RISC and Plaintiff's vehicle purchase. There is nothing unconscionable about its scope.

Third, Plaintiff argues that the arbitration clause is substantively and procedurally unconscionable because of its reference to an "unknown third document" that Plaintiff was not permitted to review. ECF No. 18 at 6–7, 11–12. This argument is based on the contractual clause that reads: "Seller assigns its interest to Santander Consumer USA (Assignee) under the terms of Seller's agreement(s) with Assignee." ECF No. 13-2 at 5. Plaintiff asserts that there was no "meeting of the minds" because he was not presented, at signing, with the agreement specifying the terms of Koons Automotive's agreement with Santander. He further contends that the Court cannot decide the validity and enforceability of the arbitration clause without seeing the agreement between Koons Automotive and Santander and determining "what rights, restrictions and limitations related to the assignment the agreement contains." ECF No. 18 at 12.

Plaintiff provides no legal authority for these assertions and this Court is aware of none. On the contrary, the terms on which Koons Automotive agreed to assign its interest in the RISC to Santander appear irrelevant to the disposition or arbitrability of Plaintiff's claims. The RISC plainly states that Koons Automotive's interest in the contract is assigned to Santander Consumer USA. More was not required to enable Defendant Santander to enforce the contract against Plaintiff. The terms that govern Koons Automotive's relationship with Santander were not, as Plaintiff argues, "part of the contractual agreement" between Plaintiff and Koons Automotive, and they have no effect

11

on Plaintiff's rights thereunder.[6]  ECF No. 18 at 12.  The Court therefore finds no unconscionability—either procedural or substantive—on this basis.

Finally, Plaintiff argues that the arbitration clause is unconscionable because both the NAF and the AAA were illusory forums at the time the contract was signed.  ECF No. 18 at 12–14.  The parties agree that the NAF no longer hears consumer matters and is therefore an unavailable forum for arbitration.  However, the AAA is listed as an alternative forum and is apparently available to hear the present dispute.[7]  Plaintiff asserts that the AAA is nonetheless an illusory forum because (1) the arbitration clause in the RISC is not found in the AAA Consumer Clause registry, (2) the AAA will not allow Santander to request review of an arbitration agreement "on behalf of another business," and (3) the arbitration clause fails AAA's Consumer Due Process requirements because it permits parties to "request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel" if the award is $0 or exceeds $100,000, or includes injunctive relief.  ECF No. 13-2 at 6.

Plaintiff's first point is easily disposed of.  Nothing in the case law or the AAA rules requires a party enforcing an arbitration agreement to register prior to filing a demand for arbitration.  *See Edmondson v. Lilliston Ford Inc.*, 722 F. App'x 251, 254 (3d Cir. 2018) ("[T]he Rules make clear that failure to register prior to the filing of a demand for arbitration

---

[6] Plaintiff also references the provision of the RISC stating that "[u]pon assignment of this contract: (i) only this contract and addenda to this contract comprise the entire agreement between you and the assignee relating to this contract[.]"  ECF No. 13-2 at 5.  Nothing in this provision or the pleadings suggests that an addendum to the contract actually existed.

[7] In addition, the agreement provides that Plaintiff may select his own arbitrator subject to the Seller's approval.  ECF No. 13-2 at 6.  Plaintiff has not argued that this clause represents an illusory option.

is of no moment; rather, the AAA will administer the arbitration once the business pays the review and registry fees."). Likewise, the undersigned sees no reason to believe—and Plaintiff cites no rule or law to the contrary—that the AAA will bar arbitration by Defendant Santander as assignee to Koons Automotive's interest in the contract. As for the contractual provision allowing requests for a new arbitration depending on the amount of award, Plaintiff does not identify or explain which AAA Consumer Due Process requirement[8] would be violated. Courts that have considered similar or identical provisions have not generally found them unconscionable. *See*, *e.g.*, *Montoya v. Comcast Corp.*, 2016 WL 5340651, at *8 (E.D. Cal. Sept. 22, 2016) (upholding appeal provision for awards exceeding $75,000); *Williams v. TCF Nat'l Bank*, 2013 WL 708123, at *12 (N.D. Ill. Feb. 26, 2013) (upholding appeal provision for awards exceeding $100,000, to be heard by a three-arbitrator panel); *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751–53 (Cal. 2015) (upholding provision that an arbitrator's award "shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $ 0 or against a party is in excess of $ 100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel."). In the absence of persuasive authority or argument to support Plaintiff's assertion, the Court finds no unconscionability on the basis of the appeal provision.

---

[8] The Court assumes that Plaintiff is referring to the AAA Consumer Due Process Protocol Statement of Principles, available at https://www.adr.org. However, Plaintiff does not identify which principle would be offended by the contractual provision at issue.

The Court therefore finds that the arbitration clause is enforceable and valid. In the absence of a specific challenge to the delegation clause, as explained above, the Court is without power to determine the scope of the arbitration clause or the arbitrability of Plaintiff's claims. Accordingly, the Court does not consider Plaintiff's argument that his claims fall outside the scope of the arbitration clause.[9]

***Arbitration of Claims Against Defendants Mid Atlantic and PAR***

Having determined that Plaintiff's claims are arbitrable against Defendant Santander, the Court turns to whether Defendants Mid Atlantic and PAR, who are neither signatories nor assignees to the RISC, may compel arbitration. The Court finds that they may.

"It is well-established . . . that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 627 (4th Cir. 2006). The doctrine of equitable estoppel permits a nonsignatory to compel arbitration in two different circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when

---

[9] However, the Court would have no difficulty finding that Plaintiff's claims fall squarely within the scope of the arbitration agreement as the alleged attempts to repossess Plaintiff's vehicle, whether lawful or not, clearly "arise[] out of or relate[] to [the] purchase or condition of this vehicle, this contract, or any resulting transaction or relationship." ECF No. 13-2 at 6.

> the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (internal quotation marks and alterations omitted).

In the present case, both circumstances exist. First, Plaintiff's claims against Mid Atlantic and PAR rely on the terms of the RISC. Plaintiff's allegation that Mid Atlantic and PAR wrongfully attempted to repossess his vehicle are wholly dependent on the contract terms, i.e., that the vehicle was in fact paid off. Indeed, the first factual allegation of the Amended Complaint is as follows: "On or about May 6, 2014, Plaintiff entered into a retail installment sale contract with Koons Automotive, Inc. for the purchase of a personal vehicle." ECF No. 10 ¶ 6. The Court finds that Plaintiff's causes of action are inextricably intertwined with the terms of the RISC, making enforcement of the arbitration clause by Defendants Mid Atlantic and PAR appropriate.

Second, Plaintiff clearly "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Brantley*, 424 F.3d at 395–96. The alleged misconduct by Mid Atlantic and PAR (attempting, wrongfully, to repossess Plaintiff's car) is inseparable from the alleged misconduct by Santander. Indeed, Plaintiff alleges that Mid Atlantic and PAR were acting on Santander's behalf. Nevertheless, Plaintiff argues that the test is unsatisfied because Santander is not a signatory to the agreement. But under either Virginia or South Carolina

law, Santander is for all practical purposes a signatory to the contract as a result of the assignment of Koons Automotive's interest. *See Sanders v. Savannah Highway Auto. Co.*, 852 S.E.2d 744, 746–47 (S.C. Ct. App. Oct. 21, 2020) (finding that where a car dealership assigned its interest in the RISC to Santander, Santander acquired the dealership's right to compel arbitration); *Union Recovery Ltd. Pshp. v. Horton*, 477 S.E.2d 521, 523 (Va. 1996) ("It is well established law in Virginia that an assignee obtains his rights from the assignor, and, thus, he is said to 'stand in the shoes' of the assignor when pursuing an action on the contract or instrument assigned.") (citation omitted); *DuPont de-Bie v. Vredenburgh*, 490 F.2d 1057, 1061 (4th Cir. 1974) ("The principle is well settled that a valid assignment operates to pass the whole right of the assignor, and that thereafter the assignee stands in the place of the assignor, possessing all rights or remedies available to the assignor."). In short, there is no functional difference in this context between signatory and assignee.

The Court finds that the arbitration between Plaintiff and Defendant Santander "would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted" if the claims against Mid Atlantic and PAR go forward for judicial determination. *Brantley*, 424 F.3d at 395–96. Therefore, the motions of Defendants Mid Atlantic and PAR to compel arbitration are granted.

### *Disposition of Claims*

The final question before this Court is the proper disposition of Plaintiff's claims. Defendants seek dismissal, while Plaintiff requests that the Court retain jurisdiction and stay the case. The Fourth Circuit has held that "notwithstanding the terms of [9 U.S.C.] § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are

arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (citation omitted); *see also Greenville Hosp. Sys. v. Employee Welfare Benefit Plan*, 628 F. App'x 842, 845–46 (4th Cir. 2015) ("If a court determines . . . that all of the issues presented are arbitrable, then it may dismiss the case, as the district court did here.").[10] However, nothing in the case law or statutory scheme requires dismissal. Therefore, in the Court's discretion, Defendants' request for dismissal is denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Compel Arbitration and to Dismiss [13, 31, 34] are **GRANTED IN PART** and **DENIED IN PART** and the case is **STAYED** pending arbitration of Plaintiff's claims. Defendant Santander's Motion to Stay Discovery Pending Resolution of Motion to Compel Arbitration and to Dismiss [14] is **FOUND AS MOOT**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

July 14, 2021
Spartanburg, South Carolina

---

[10] In a subsequent opinion, the Fourth Circuit noted a circuit split and "some tension" among its own decisions regarding the propriety of dismissal. *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 n.18 (4th Cir. 2012). The court found it unnecessary to resolve the disagreement because not all issues were subject to arbitration. *Id*.